**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

      Plaintiff,

v.                                                                                  Case No. _____

MOHAZALI JAFFER, VALLEY
NATIONAL BANCORP d/b/a
VALLEY NATIONAL BANK,
CATHERINE WEIS, and
CANTERA CONSTRUCTION
SERVICES, LLC,

      Defendants.

_____/

## COMPLAINT FOR INTERPLEADER

Pursuant to Rule 22 of the Federal Rules of Civil Procedure and 28 U.S.C.

§ 1335, Plaintiff The Lincoln National Life Insurance Company ("Lincoln"), for its

Complaint for Interpleader, alleges and says as follows:

### PARTIES

1.      Lincoln is an insurance company existing under the laws of the state of

Indiana with its principal place of business in Radnor, Pennsylvania.

2.      Defendant Mohazali Jaffer ("Mr. Jaffer") is a citizen and resident of

Little Rock, Pulaski County, Arkansas, residing at 4216 Bowman Road, Apartment

E19, Little Rock, Arkansas 72210.

1

3.      Valley National Bancorp d/b/a Valley National Bank ("Valley National Bank") is a New Jersey corporation with its principal place of business in Morristown, New Jersey.

4.      Defendant Catherine Weis ("Ms. Weis") is a citizen and resident of Brandon, Hillsborough County, Florida, residing at 2206 Tanglewood Way, Brandon, Florida 33511.

5.      Cantera Construction Services, LLC ("Cantera Construction Services") is an administratively dissolved Florida limited liability company with a principal place of business located at 113 South Valrico Road, Valrico, Florida 33594. Ms. Weis serves as the Registered Agent for Cantera Construction Services and is authorized to accept service of process on its behalf. *See* Fla. Stat. § 605.0714(6).

6.      Mr. Jaffer, Valley National Bank, Ms. Weis, and Cantera Construction Services are potential competing claimants to a death benefit payable under the life insurance policy described below insuring the life of Tazine Jaffer (the "Decedent"). Upon information and belief, Mr. Jaffer is Decedent's brother; Ms. Weis was Decedent's personal and business bookkeeper; Cantera Construction Services was a business managed by Decedent and Ms. Weis; and Valley National Bank was the assignee of the life insurance policy described below. In this Complaint for Interpleader, Mr. Jaffer, Ms. Weis, Cantera Construction Services, and Valley National Bank are referred to collectively as "Claimants."

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this is an action in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

8.      This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1335 because this is an interpleader action in which two or more diverse claimants are claiming to be entitled to money of more than $500.00.

9.      This Court has personal jurisdiction over Claimants under Fla. Stat. § 48.193 because Claimants are either citizens and residents of Florida or a nonresident engaging in a business in Florida, and the exercise of personal jurisdiction over Claimants comports with due process because each has sufficient minimum contacts with the State of Florida such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.

10.     This Court also has personal jurisdiction over Claimants pursuant to Federal Rule of Civil Procedure 4(k)(1)(C) and 28 U.S.C. § 2361, which authorizes nationwide service of process in this action, and the exercise of personal jurisdiction over Claimants comports with due process.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1397 and 28 U.S.C. § 89(b) because Ms. Weis, one of the claimants, resides in Brandon, Florida in Hillsborough County, which is in the Middle District of Florida, Tampa Division.

3

## CLAIM FOR INTERPLEADER

12.    Lincoln brings this action for interpleader relating to a term life insurance policy bearing policy number ME-7162839 issued on August 17, 2010,[1] by Lincoln to Friends of Dolphin, Inc. and insuring the life of Decedent (the "Policy"). A redacted duplicate copy of the Policy is attached as **Exhibit 1**.

13.    The Policy provides for a death benefit of $500,000 (the "Policy Benefit").

14.    On the application for the Policy dated June 26, 2010, Decedent, as the Managing Director of Friends of Dolphins, Inc., designated Platinum Bank[2] as the sole primary beneficiary of the Policy and no contingent beneficiaries. A redacted copy of the Policy application is attached as **Exhibit 2**.

15.    On August 2, 2010, Decedent, as the Managing Partner of Friends of Dolphins, Inc., executed an Amendment to Application for Insurance, altering Question 44 of the policy to name Friends of Dolphins, Inc. as the primary beneficiary of the Policy. A copy of this amendment is attached as **Exhibit 3**.

16.    On or about April 7, 2011, Decedent, as Director of Friends of Dolphins, Inc., executed an Assignment of Life Insurance Policy as Collateral in which she assigned to Platinum Bank:

> [the] Term Life Insurance Policy Number ME7162839 in the amount of $500,000.00 on the life of TAZINE JAFFER, issued by THE LINCOLN

---

[1] The original Policy Date was July 26, 2010 but was changed to August 17, 2010 by Endorsement. (Exhibit 1 at 14).

[2] Platinum Bank is now known as SouthState Bank, N.A. but will be referred to herein as Platinum Bank.

> NATIONAL LIFE INSURANCE COMPANY . . . and any supplementary contracts issued in connection therewith . . . upon the life of TAZINE JAFFER, and all claims, options, privileges, rights, title and interest therein and thereunder, . . . subject to all the terms and conditions of the Policy and to all superior liens, if any, which the Insurer may have against the Policy.

A redacted copy of this assignment is attached hereto as **Exhibit 4.**

17.    On or about September 3, 2014, Decedent, as President of Friends of Dolphins, Inc., executed an Assignment of Life Insurance or Annuity Policy as Collateral Security, in which she assigned to "USAMERIBANK, ISAOA" ("USAmeriBank") "as collateral security . . . , the policy . . . identified above [ME7162839] and all rights to the proceeds and benefits thereunder." Mr. Jaffer purported to sign the Assignment of Life Insurance or Annuity Policy as Collateral Security to USAmeriBank as the "Irrevocable Beneficiary."  A copy of this assignment is attached hereto as **Exhibit 5**.

18.    Valley National Bank subsequently acquired USAmeriBank. Accordingly, on November 14, 2023, Valley National Bank requested that Lincoln update the Policy to reflect Valley National Bank as the assignee pursuant to its Articles of Merger with USAmeriBank.  *See* **Exhibit 6**.

19.    On February 9, 2022, Lincoln received a Beneficiary Change form executed by Decedent on February 3, 2022, in which Decedent, as Managing Director of Friends of Dolphins, Inc., changed the primary beneficiary designation to Cantera Construction Services and did not name a contingent beneficiary. A redacted copy of the Beneficiary Change is attached as **Exhibit 7**.

20. Thereafter, Lincoln received a second Beneficiary Change form executed by Decedent on January 13, 2025, in which Decedent, as Owner/Director of Friends of Dolphins, Inc., changed the primary beneficiary designation to Ms. Weis and did not name a contingent beneficiary. A redacted copy of the Beneficiary Change is attached as **Exhibit 8**.

21. On March 2, 2026, Ms. Weis notified Lincoln of Decedent's death.

22. Upon Decedent's death, the Policy Benefit became payable to the proper assignee or beneficiary.

**Platinum Bank has released its assignment.**

23. On March 5, 2026, Lincoln sent a letter to Platinum Bank, advising that Lincoln was notified of the death of Tazine Jaffer and enclosing documents for Platinum Bank to complete for Lincoln to process its claim. A copy of this correspondence is attached as **Exhibit 9**.

24. On March 26, 2026, Platinum Bank confirmed that it has no outstanding loans to the insured or borrower identified in the assignment. Accordingly, Platinum Bank signed a Release of Assignment of Life Insurance Policy or Annuity Contract as Collateral Security on April 1, 2026, and is not claiming entitlement to the funds. A copy of Platinum Bank's release is attached as **Exhibit 10**.

**Competing Claims Between Valley National Bank
and Catherine Weis**

25. On March 5, 2026, Lincoln sent a letter to Valley National Bank, advising that Lincoln was notified of the death of Tazine Jaffer and enclosing

6

documents for Valley National Bank to complete for Lincoln to process its claim. A copy of this correspondence is attached as **Exhibit 11**.

26.     Lincoln also sent a letter to Ms. Weis on March 5, 2026, advising that Lincoln was notified of the death of Tazine Jaffer and enclosing documents for Ms. Weis to complete for Lincoln to process her claim. A copy of this correspondence is attached as **Exhibit 12**.

27.     Lincoln thereafter received a Claimant's Statement and Life Split Dollar/Collateral Assignment form from Valley National Bank dated April 6, 2026, claiming entitlement to the full Policy Benefit based on the collateral assignment. Redacted copies of these forms are attached as **Exhibit 13**.

28.     On April 17, 2026, Lincoln sent Ms. Weis an email about the assignment to Valley National Bank and requested that she sign the Life Split Dollar/Collateral Assignment form "to signify [her] understanding of the collateral assignment payment to Valley." Specifically, as stated on the Life Split Dollar/Collateral Assignment form, Lincoln was asking Ms. Weis to "agree that all claims made by [Valley National Bank] under the [Policy] may be settled by paying [$500,000.00] to [Valley National Bank]." A redacted copy of this correspondence, along with the Life Split Dollar/Collateral Assignment form is attached as **Exhibit 14**.

29.     On May 5, 2026, Valley National Bank reached out to Ms. Weis, again requesting that she sign the Life Split Dollar/Collateral Assignment form. In response, on May 7, 2026, Ms. Weis stated that "[u]ntil the proceeds from the December 3, 2025,

7

real estate sale, which **predates** Ms. Jaffer's death, and for which Valley has charging order, are distributed, I decline to sign any paperwork or move forward with the claim." A copy of this correspondence is attached as **Exhibit 15**.

30.    On May 8, 2026, Lincoln sent a letter via e-mail to Ms. Weis and Valley National Bank, noting that "[a]s [Lincoln] ha[s] been working with [them] to obtain necessary documentation to settle the claim, it has become clear that there is a dispute regarding who is entitled to what portion of the death benefit due to various assignments on the Policy." Lincoln further advised that, "[d]ue to this dispute, Lincoln cannot move forward with payment absent an agreement or judicial intervention." Lincoln set a deadline of May 18, 2026, for Ms. Weis and Valley National Bank to reach an agreement and advised that "[i]f [they] do not notify Lincoln of an agreement, Lincoln may move forward to file an interpleader and seek to deposit the death benefit into the registry of the court where a judge can determine the proper recipient(s)." A copy of this letter is attached as **Exhibit 16**.

31.    Lincoln did not hear anything in response from Ms. Weis. Valley National Bank inquired if Lincoln would be moving forward with an interpleader.

**Mr. Jaffer Contests any Funds to Ms. Weis.**

32.    In the event that the Court finds the assignment to Valley National Bank is invalid, Mr. Jaffer has indicated he would contest any award of funds to Ms. Weis.

33.    In particular, on March 5, 2026, Lincoln received an e-mail from Mr. Jaffer regarding Decedent's Policy, attaching a note from Decedent's doctor and

8

stating that Mr. Jaffer had "called yesterday, Wed [sic] afternoon to file a claim as [he had] been informed by [his] sister [i.e., Decedent] many times that [he] was the sole beneficiary of the . . . policy" and that "[Ms.] Weis, [Decedent's] personal and business book keeper had also confirmed that to [him] as well." He further stated that "there seems to be a fraudulent claim , if the beneficiary is someone eles [sic] other than [himself], being her brother as well as the only living immediate family member." Finally, Mr. Jaffer stated that "[Ms.] Weis had access to all digital signatures for [his] sister and email accounts as well" and that "[he felt] she somehow managed to change the beneficiary." Accordingly, Mr. Jaffer requested "[Lincoln] stop from paying the policy benefit until a complete investigation has been done on this matters [sic] by [his] attorneys and also law enforcement." A redacted copy of this email and doctor's note is attached as **Exhibit 17**.

34.     Thereafter, on March 8, 2026, Lincoln received an email from counsel for Mr. Jaffer attaching a letter from counsel reiterating Mr. Jaffer's concerns and a note from Decedent's doctor. Counsel stated in his letter that "[Decedent's] doctor indicat[ed] [in the attached note] that [Decedent's] mental status was not stable," and that Mr. Jaffer is "willing to institute a lawsuit in order to protect what he believes his his [sic] rights as the intended beneficiary of this life insurance policy." A redacted copy of this email and doctor's note is attached as **Exhibit 18**.

35.     Lincoln thereafter advised Mr. Jaffer's counsel that a collateral assignment was in place that would likely consume the entire death benefit. Upon

information and belief, Mr. Jaffer is not contesting the assignment to Valley National Bank.

36.    In the event that the Court finds (1) the assignment to Valley National Bank to be invalid and (2) the Beneficiary Change dated January 13, 2025, from Cantera Construction Services to Ms. Weis to be invalid (as Mr. Jaffer appears to claim), then Cantera Construction Services is the last named beneficiary.

\*\*\*

37.    In light of the potential adverse claims from Claimants and the associated factual issues involved, Lincoln cannot determine the proper beneficiary(ies) of the Policy Benefit without risking exposure to double liability. *See Primerica Life Ins. Co. v. Pedrogo*, No. 8:25-cv-02127-SDM-AEP, 2025 WL 3078295, at \*1 (M.D. Fla. Nov. 4, 2025) ("Interpleader is available to resolve the competing claims and to protect the stakeholder.").

38.    As a mere stakeholder, Lincoln has no interest in the Policy Benefit (except to recover attorneys' fees and costs associated with this action). Lincoln, therefore, respectfully requests that this Court determine to whom the Policy Benefit should be paid.

39.    Lincoln will deposit into the registry of the Court the Policy Benefit upon issuance of an order authorizing such payment.

WHEREFORE, Lincoln prays for judgment as follows:

(a)    That Claimants be ordered to interplead and settle among themselves their respective claims to the Policy Benefit;

10

(b)    That Lincoln be permitted to pay the Policy Benefit into the registry of the Court;

(c)    That Claimants each be restrained from initiating any other action or proceeding in any state or federal court against Lincoln for recovery of the Policy Benefit or any part thereof;

(d)    That Lincoln be found to have no further liability beyond having the Policy Benefit deposited into the registry of this Court;

(e)    That Lincoln be discharged and dismissed with prejudice from this case; and

(f)    That the Court award such other and further relief, including attorneys' fees and costs, to which Lincoln is entitled in law or equity, as this Court deems just and proper.

Dated: July 13, 2026

Respectfully submitted,

*/s/ Brett Wilson*
Brett Wilson (FL Bar No. 1059594)
BRADLEY ARANT BOULT CUMMINGS LLP
1001 Water Street, Suite 1000
Tampa, Florida  33602-5468
T:  (813) 559-5500 | F:  (813) 229-5946
Primary Email:  bwilson@bradley.com
Secondary Email:  mphilippe@bradley.com